UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SAMUEL DAVIS, Jr., | ) |
| Petitioner, | ) ) ) |
| v. | ) CAUSE NO. 3:16-cv-643-RLM-MGG ) ) |
| SUPERINTENDENT, | ) ) |
| Respondent. | ) |

OPINION AND ORDER

Samuel Davis, Jr., a *pro se* prisoner, filed an amended habeas corpus petition challenging the prison disciplinary hearing where a Disciplinary Hearing Officer found him guilty of attempting to traffic in violation of Indiana Department of Correction policy A-111 and A-113. As a result, Mr. Davis was sanctioned with the loss of 180 days earned credit time and was demoted from Credit Class 2 to Credit Class 3. ECF 18-8.

As a preliminary matter, the respondent argues that Mr. Davis's claims can't be considered because they are time-barred. The respondent contends that habeas corpus actions have a one-year limitations period pursuant to 28 U.S.C. § 2254, and that Mr. Davis didn't pursue his claim within this period. The respondent also concedes that the Seventh Circuit has already determined that the one-year limitations period applies to conviction, not disciplinary, habeas cases. *See* Cox v. McBride, 279 F.3d 492 (7th Cir. 2002). The respondent insists that our court of appeals' interpretation conflicts with that of other circuits, and should be

changed. As the respondent acknowledges, this court is bound by the precedent of this circuit, and no other. The respondent may present this argument on appeal, but it won't be considered further here.

Much of Mr. Davis's petition is premised on his argument that the Department of Correction violated its own internal policies in imposing his discipline. The Department of Correction's failure to follow its own policy doesn't rise to the level of a constitutional violation. Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("state-law violations provide no basis for federal habeas relief"). Still, the court will analyze Mr. Davis' claims to determine whether he has identified any violations of his federal rights. *See id.* at 67-68 ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States").

In Ground One, Mr. Davis challenges the sufficiency of the evidence that the hearing officer used to find him guilty. In the disciplinary context, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445, 455-456 (1985). "In reviewing a decision for some evidence, courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis."

McPherson v. McBride, 188 F.3d 784, 786 (7th Cir. 1999) (quotation marks omitted).

> [T]he findings of a prison disciplinary board [need only] have the support of some evidence in the record. This is a lenient standard, requiring no more than a modicum of evidence. Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary. Although some evidence is not much, it still must point to the accused's guilt. It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision.

Webb v. Anderson, 224 F.3d 649, 652 (7th Cir. 2000) (quotation marks, citations, parenthesis, and ellipsis omitted).

An inmate violates IDOC A-111 by "[a]ttempting or conspiring or aiding and abetting with another to commit any Class A offense." An inmate violates IDOC A-113 by "[e]ngaging in trafficking (as defined in IC 35-44-3-9) with anyone who is not an offender residing in the same facility." At the time of incident, IC 35-44-3-9 had already been repealed and replaced by Ind. Code 35-44.1-3-5. *See* Pub. L. 126-2012, Sec. 53, eff. July 1, 2012. The operative statute states,

> (b) Except as provided in subsection (d), a person who, without the prior authorization of the person in charge of a penal facility or juvenile facility knowingly or intentionally:
>     (1) delivers, or carries into the penal facility or juvenile facility with intent to deliver, an article to an inmate or child of the facility;
>     (2) carries, or receives with intent to carry out of the penal facility or juvenile facility, an article from an inmate or child of the facility; or
>     (3) delivers, or carries to a worksite with the intent to deliver, alcoholic beverages to an inmate or child of a jail work crew or community work crew;

commits trafficking with an inmate, a Class A misdemeanor. However, the offense is a Class C felony under subdivision (1) or (2) if the article is a controlled substance, a deadly weapon, or a cellular telephone or other wireless or cellular communications device.

Ind. Code § 35-44.1-3-5 (eff. Mar. 27, 2013 to June 30, 2014). The Department of Correction defined "attempt" as:

> Planning to do something that would be a violation of these administrative procedures or any Department or facility rule, procedure or directive if the act had actually been committed or when an offender commits acts which showed a plan to violate these administrative procedures or a Department or facility rule, procedure or directive when the acts occurred.

The Conduct Report charged Mr. Davis as follows:

> On the above date and approximate time, I, Sgt. C. Sipich along with Ofc. M. Edwards conducted a routine shakedown on cell D3-106. During this shakedown I found a "note" on offender Davis' desk. On the note was a butterfly sticker with my name written underneath it. This "note" contains offender Davis' mother's address and the next line states, "maybe, man I wish she'd leave me something. I'll pray about it."

Officer Edwards also submitted a witness report that stated:

> On the above date & time, I Ofc. M. Edwards and Sgt. Sipich were conducting a routine shakedown on cell D3-106. During this search Sgt. Sipich found a note on offender Davis' desk. On the note was a sticker of a butterfly and Sgt. Sipich's name under it. The note was contained (sic) offender Davis' mothers address.

While none of the parties explain the significance of the butterfly sticker, it is evident that everyone involved believed it was significant. During his disciplinary hearing, Mr. Davis defended his conduct by arguing, "why would I put

4

a butterfly on a rough draft I wrote IA." Mr. Davis requested that the hearing officer interview a witness to determine where he obtained the sticker. In a letter trying to reverse his discipline, Mr. Davis argued that the reporting officer, or another prison employee, planted the sticker on his letter. The sticker's presence was also emphasized by the reporting officer in the Conduct Report, by Officer Edwards in his witness statement, by the DHO in her declaration, and by the the respondent in the return. It would have been helpful for one of the parties to explain the significance of the sticker in the prison context, the court doesn't need such and explanation to uphold the hearing officer's finding of guilt. It was for the hearing officer, and not this court, to weigh the evidence. The presence of the sticker evidently weighed in favor of Mr. Davis' guilt. The hearing officer must be granted wide deference to make these types of determinations, because the prison officials, and not this court, are in the best position to understand the significance of objects or phrases that would have no special meaning outside of the prison context. The hearing officer didn't act in an unreasonable or arbitrary manner.

Sticker aside, the hearing officer explains that she "found Davis guilty of attempting to engage in trafficking because the note bore Sergeant Sipich's name and included Davis' mother's address and telephone number. The note also read, 'man I wish she'd leave me something.'" Based on this evidence, the hearing officer concluded, "[t]he note thus indicates that Davis was attempting to convince Sergeant Sipich to go to Davis' mother's house and bring something into the prison for him. Davis even said he would 'pray about it,' hoping that Sergeant

5

Sipich would be agreeable." This is neither an unreasonable or arbitrary conclusion. The letter was addressed to Sgt. Sipich, hinted that Mr. Davis' mother might be holding something for him, and contained the information necessary for Sgt. Sipich to contact Mr. Davis' mother. This is "some evidence" that Mr. Davis was attempting to engage Sgt. Sipich in an operation to traffic contraband into the prison. Mr. Davis isn't entitled to habeas corpus relief based on Ground One.

In Ground Two, Mr. Davis claims that he was improperly denied the opportunity to review Officer Edwards' witness statement and the note confiscated from his cell. Inmates have a right to present relevant, exculpatory evidence in their defense. Miller v. Duckworth, 963 F.2d 1002, 1005 (7th Cir. 1992). Exculpatory in this context means evidence which "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." Meeks v. McBride, 81 F.3d 717, 721 (7th Cir. 1996). Mr. Davis' right to present evidence was satisfied. During his screening, Mr. Davis had the chance to request witnesses or evidence in his defense. Mr. Davis asked that the hearing officer speak with Nurse Jaske, who would tell the hearing officer that she gave him a piece of paper with a butterfly sticker on it. The hearing officer obtained a statement from Nurse Jaske, who denied having given Mr. Davis the sticker. Mr. Davis didn't request any other evidence at the time of his screening. He later wrote a supplemental request for evidence, but didn't ask for Officer Edwards as a witness or to review the confiscated letter. When Mr. Davis finally requested the evidence during his disciplinary hearing, his request was untimely. *Cf.* Miller v.

Duckworth, 963 F.2d at 1005 fn. 2 (prisoners "certainly cannot wait until the day of the hearing" to make a witness request); Portee v. Vannatta, 105 F. App'x 855, 857 (7th Cir. 2004) ("Although inmates have a constitutional right to call witnesses at disciplinary hearings…this right is limited and requests that inmates make the day of the hearing are not timely"). Mr. Davis' due process right to present evidence in his defense was satisfied.

To the extent that the hearing officer might erred in denying Mr. Davis' request to review his letter, the error was harmless. When a prisoner is denied the opportunity to present relevant evidence, the prisoner must establish that the denial of the evidence resulted in actual prejudice, rather than harmless error. Piggie v. Cotton, 342 F.3d 660, 666 (7th Cir. 2003). Mr. Davis wrote the note, so he was aware of its contents, and the part of the note that served as the basis of his discipline was quoted in the Conduct Report. Mr. Davis hasn't established that he was prejudiced in any way by the hearing officer's denial of his request to see the letter; Ground Two doesn't identify a basis for habeas corpus relief.

Finally, Mr. Davis argues that during his administrative appeal his sanctions were reduced from a 365 day loss in earned credit time to a 180 day loss, but that this reduction was not implemented. Mr. Davis' prison records demonstrate that this reduction of time was implemented.

For the reasons set forth above, the petition (ECF 14) is DENIED. The clerk is DIRECTED to close this case.

SO ORDERED.

ENTERED: August 7, 2017.	/s/ Robert L. Miller, Jr.
Judge
United States District Court